ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7289
    Email: jeffrey.bornstein@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) NO. CR 24-00312-001WHA |
|---|---|
| Plaintiff, | ) |
| v. | ) **UNITED STATES' SENTENCING MEMORANDUM** |
| ANGELMARIA RAMOS AGUILAR, | ) Date: September 3, 2024 |
| Defendant. | ) Time: 2:00 a.m. |
|  | ) Court: Hon. William Alsup |

    The parties are scheduled to appear on September 3, 2024, for sentencing. On June 5, 2024, the defendant waived indictment and was charged in a one count Information with possession with the intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)1(C). On July 2, 2024, Mr. Aguilar entered into a Plea Agreement pursuant to Rule 11(c)(1)(B) and admitted that he did in fact possess with the intent to distribute a variety of controlled substances, including fentanyl. On August 13, 2024, the government agreed that the Defendant had met the criteria for the safety valve.

    This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District ("the Tenderloin") through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of

street-level dealing where the defendant has limited criminal history or was in possession of smaller amounts of fentanyl, leading the United States to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking.

Given all of the facts and circumstances that underlie this case including that it is not a traditional federal case but one that arises out of our focused attempt to ameliorate the on-going drug dealing in and around the Tenderloin, and for the reasons set forth in detail in the PSR, we recommend a sentence of time served plus one court day; forfeiture of the cash and phones and drug scales; and imposition of the special, mandatory and standard conditions of Supervised Release, attached as Appendix A to the Plea Agreement. In addition, the Government urges the Court to ensure that the Defendant is released to the Custody of the United States Marshal on the last day of his sentence and then to ICE for deportation proceedings.

## I.   APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range slightly differently than the PSR because of the conversion of cocaine base to converted drug weight is based on the same formula as it would be for cocaine HCL pursuant to guidance from the Attorney General as explained below:

  a.  Base Offense Level, U.S.S.G. § 2D1.1(a)(5), (c)(12):                                26
      Defendant possessed between 620.75 KG and 700 KG of Converted Drug Weight[1]

  b.  Acceptance of Responsibility: U.S.S.G. § 3E1.1:                                     -3

  c.  Specific Offense Characteristics: U.S.S.G. §§ 2D1.1(b)(1)(18), 5C1.2               -2

  d.  Adjusted Offense Level:                                                            21

The government calculates a Criminal History Category of I (1 point).[2]

---

[1] *See* Addendum – Converted Drug Weight Table.

[2] As set forth in the Plea Agreement and PSR at ¶35, the Defendant has one prior conviction on October 10, 2022, for being an Accessory After the Fact (Cal Penal Code § 32), a felony, with a 33-day sentence and 2 years of probation based on a buy-bust in the Tenderloin. In that resolution, we understand that he also resolved pending cases from his earlier arrests for additional Tenderloin drug sales on September 8, 2021, and July 6, 2022. Those cases were both dismissed.

An Adjusted Offense Level 21 coupled with Criminal History Category I results in an advisory Guidelines range of 37-46 months.

The government also seeks a three-year term of supervised release (the minimum term required by statute) and imposition of the $100 mandatory special assessment, along with a forfeiture order regarding the items specified in the Information.

## II.   SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the United States requests a sentence of time served plus one court day, a three-year term of supervised release (the minimum term required by statute) and imposition of the $100 mandatory special assessment, along with a forfeiture order regarding the items specified in the Information and Plea Agreement.  The government also seeks a special condition that requires that the defendant not re-enter the Tenderloin during the period of supervised release and that he be subject to a suspicion less search condition.  The Court should also order the other conditions set forth in Appendix A to the Plea Agreement and this Memorandum and a forfeiture order regarding the cellphones, digital scales, and cash that he possessed when he was arrested.

A.   **Section 3553 factors**

1. *Nature and circumstances of the offense and history and characteristics of the defendant*

The defendant, Angelmaria Ramos Aguilar, is a 25-year-old man who was born in Honduras and is not a citizen of the United States.  According to the Department of Homeland Security, the defendant has not previously been removed from the United States.  The government has determined that there is currently an immigration detainer in place.  According to information provided by the Department of Homeland Security, a final order of removal has been entered regarding Mr. Ramos Aguilar, and he will be removed from the United States upon his release from federal custody.

The relevant facts are set out in the Plea Agreement *See,* ¶2 and in the PSR at ¶¶ 5-18.

1. In short, Mr. Ramos Aguilar was arrested by federal agents on June 4, 2024.  Prior to his arrest, the defendant was seen via video cameras conducting drug deals in the Tenderloin, more specifically in and around the vicinity of Franklin Street and Eddy Street.  He admits that he knowingly

possessed with the intent to distribute fentanyl and other controlled substances. Prior to his arrest, he admits that he engaged in several sales of illegal drugs, including fentanyl, from approximately 12:58 a.m. to the time of his arrest, at approximately 1:10 a.m. He was using a bag holder to assist him in these sales. He admits that at the time of his arrest, he possessed multiple plastic bags containing the following controlled substances: approximately 175.3 grams of fentanyl (including packaging and additional plastic evidence bags); approximately 82.1 grams of methamphetamine (including packaging); approximately 12.6 grams of heroin (including packaging); and approximately 28.5 grams of cocaine base (including packaging).[3] In the Plea Agreement, he admits that the appropriate Sentencing Guideline Range for sentencing is a Level 21, Criminal history Category I, with a range of 37-46 months.[4]

When he was arrested on June 4, 2024, he also possessed two cell phones and two small digital scales that he used in connection with his drug dealing activities and $2,204.50 in US Currency from his drug sales. He admits that he was previously arrested in San Francisco for illegally selling drugs in the Tenderloin on September 8, 2021, June 1, 2022, and July 6, 2022, and that he resolved all three of these cases in San Francisco Superior Court on October 10, 2022, with a guilty plea to a violation of California Penal Code § 32, (accessory after the fact). He was sentenced to 33 days in jail and probation for two years. He admits that he violated multiple stay away orders when he returned to the Tenderloin on June 4, 2024, to again sell drugs as set forth above. He also admits that he is a citizen of Honduras and that he has no legal status in this country.

Mr. Ramos Aguilar has agreed to remain in custody pending resolution of this case. He has acknowledged that this conviction "makes it practically inevitable and a virtual certainty that [he] will be removed or deported from the United States." Plea Agreement, ¶ 1.

---

[3] The fentanyl, methamphetamine and cocaine base were subjected to TruNarc testing. TruNarc is a reliable device used to field test-controlled substances. All of the substances are currently at the DEA laboratory. Due to the press of other business at the laboratory, the substances have not yet been subjected to laboratory testing to ascertain their true nature and net weight. Despite this, the defendant has admitted that he possessed fentanyl, methamphetamine, heroin and cocaine base, and he has agreed to the calculation of the Sentencing Guidelines based on the gross weights of those substances (*i.e.*, including the packaging).

[4] This includes the two-level reduction for the safety-valve.

2. ***Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant***

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Given the amount of controlled substances the defendant possessed with respect to the offense conduct, the adjusted Guidelines range for the defendant's criminal conduct and relevant conduct is 37 to 46 months. The defendant has admitted his misconduct and been forthright about taking responsibility for his actions. The two concerns that are most troubling are the use of a bag holder who turned out to be a minor (although he denied knowing that fact) and the amount of drugs in his constructive possession. He has taken responsibility for his conduct, however, and this will be the first drug conviction he will have sustained.

The proposed sentence – of time served plus one court day and a three-year term of supervised release with a highly-restrictive geographic restriction – is a downward variance from the Guidelines range. But it is one that the government submits is appropriate given the defendant's conduct, his status as a street-level dealer, the unique problems the Tenderloin faces, and the need for deterrence and protection of the public. Ensuring that he is released to the custody of the US Marshal on the last day of his sentence will also ensure that he is released to ICE for deportation proceedings.

In order for the defendant to receive this plea offer, the defendant waived detention and has been detained since his arrest; the government offered the defendant a time-served sentence in exchange for his agreement to promptly plead guilty and proceed to sentencing (including waiving indictment); the defendant also has agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in

violation of his supervised release terms) will invite new charges or supervised release violations. If the defendant violates this stay-away order and is apprehended, he will surely face a significant sentencing recommendation from the government and a significant sentence from this Court for having violated the terms of his supervised release.

This disposition results in a drug-trafficking conviction within three months of the most recent arrest, immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin. The defendant is also making admissions regarding his citizenship and immigration status in the Plea Agreement that will all but ensure his removal from the country. The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

**B. The necessity of the proposed supervised release special conditions**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to affect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicion less search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where courts in this District have encountered recidivism

from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the Section 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of Section 3553(a).

### III. CONCLUSION

For all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a sentence of time served plus one day, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the contemplated Plea Agreement, including the stay-away condition.

DATED: August 27, 2024

Respectfully Submitted,

ISMAIL J. RAMSEY
United States Attorney

 */s/ Jeffrey Bornstein*
JEFFREY BORNSTEIN
Assistant United States Attorney

### ADDENDUM – CONVERTED DRUG WEIGHT TABLE[5]

| Substance | Amount Possessed[6] | Conversion | Converted Drug Weight |
|---|---|---|---|
| Fentanyl | 175.3 grams | 1 gram = 2.5 kilograms | 438.25 kilograms |
| Methamphetamine | 82.1 grams | 1 gram = 2 kilograms | 164.20 kilograms |
| Cocaine base | 28.5 grams | 1 gram = 200 grams[7] | 5.7 kilograms |
| Heroin | 12.6 grams | 1 gram = 1 kilogram | 12.6 kilograms |
| **Total** | - | - | **620.75 kilograms** |

---

[5] *See* U.S.S.G. § 2D1.1, Application Note 8(D) (Drug Conversion Tables).

[6] These are the *gross* weights of the substances possessed by the defendant on June 4, 2024.

[7] Pursuant to the Attorney General's December 16, 2022, memorandum, *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases*, the government recommends that the Converted Drug Weight for the cocaine base be determined by reference to the conversion rate for powder cocaine. *See* https://www.justice.gov/ag/file/1265321/dl?inline.

Appendix A

**MANDATORY CONDITIONS**

1) You must not commit another federal, state or local crime.

2) You must not unlawfully possess a controlled substance.

3) You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

4) You must cooperate in the collection of DNA as directed by the probation officer.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**STANDARD CONDITIONS OF SUPERVISION**

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court, and bring about improvements in your conduct and condition.

1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of RELEASE, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4) You must follow the instructions of the probation officer related to the conditions of supervision.

5) You must answer truthfully the questions asked by your probation officer.

6) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with, for

example), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

7) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by these and the special conditions of your supervision that he or she observes in plain view.

8) You must work at least part-time (defined as 20 hours per week) at a lawful type of employment unless excused from doing so by the probation officer for schooling, training, community service or other acceptable activities. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

9) You must not communicate or interact with someone you know is engaged in criminal activity. You must not associate, communicate, or interact with any person you know has been convicted of a felony, unless granted permission to do so by the probation officer.

10) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

If the probation officer determines that you pose a risk to a third party, the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

**SPECIAL CONDITIONS OF SUPERVISION**

1) You must cooperate in the collection of DNA as directed by the probation officer.

2) You must submit your person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), or any property under your control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state or local law enforcement officer at any time with or without suspicion. Failure to submit to such a search may be grounds for revocation; you must warn any residents that the premises may be subject to searches.

3) Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Boulevard, on the east by Powell Street and 3rd Street, and on the south by Howard Street.